Opinion filed January 27,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00050-CR 

                                                    __________

 

                                 JACK
WAYNE SMITH, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 90th District Court

 

                                                            Young
County, Texas

 

                                                      Trial
Court Cause No. 09158

 



 

                                                                  O
P I N I O N

 

            Seven-year-old
Tanner Joshua Monk was mauled to death by dogs.  The jury convicted the dogs’
owners, Jack Wayne Smith and Crystal Michelle Watson, of the offense of attack
by dog resulting in death.  The jury assessed punishment at confinement for
seven years and a $5,000 fine.  Smith appeals.[1] 
We affirm.




 

Issues

            Appellant
presents four issues for review.  In the first issue, he contends that the
statute under which he was convicted is unconstitutionally vague.  In the
second issue, he contends that his constitutional rights to a unanimous jury
verdict and to be convicted by a substantial majority were violated.  In the
third issue, appellant challenges the sufficiency of the evidence to support
his conviction.  In the final issue, appellant complains of the admission of
evidence regarding the previous actions of one of his dogs.  

Constitutionality
of Statute

            Appellant
was charged and convicted of an offense under Tex.
Health & Safety Code Ann. § 822.005(a)(1) (Vernon 2010), which
provides: 

            (a) A
person commits an offense if the person is the owner of a dog and the person:  

 

(1)
with criminal negligence, as defined by Section 6.03, Penal Code, fails to
secure the dog and the dog makes an unprovoked attack on another person that
occurs at a location other than the owner’s real property or in or on the
owner’s motor vehicle or boat and that causes serious bodily injury, as defined
by Section 1.07, Penal Code, or death to the other person.

 

A person acts
with criminal negligence when the person “ought to be aware of a substantial
and unjustifiable risk that the circumstances exist or the result will occur.” 
Tex. Penal Code Ann. § 6.03(d)
(Vernon 2003).  The legislature provided that “secure” as used in Section
822.005(a)(1) “means to take steps that a reasonable person would take to
ensure a dog remains on the owner’s property, including confining the dog in an
enclosure that is capable of preventing the escape or release of the dog.”  Tex. Health & Safety Code Ann. §
822.001(4) (Vernon 2010).  

In
his first issue, appellant challenges the constitutionality of this statute,
arguing that it is vague on its face and as applied to him.[2]
When confronted with an attack upon the constitutionality of a statute, we
presume that the statute is valid and that the legislature has not acted
unreasonably or arbitrarily.  Rodriguez v. State, 93 S.W.3d 60, 69 (Tex.
Crim. App. 2002).  A statute will be declared unconstitutionally vague if “its
prohibitions are not clearly defined.”  State v. Markovich, 77 S.W.3d
274, 279 (Tex. Crim. App. 2002) (citing Grayned v. City of Rockford, 408
U.S. 104, 108 (1972)).  A statute must provide people of ordinary intelligence
a reasonable opportunity to understand what conduct it prohibits.  Id.;
see Bynum v. State, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989).  

            Section
822.005(a)(1) prohibits a person, acting with criminal negligence, from failing
to secure a dog owned by the person.  The acts prohibited by Section
822.005(a)(1) are defined in such a way as to give a person of ordinary intelligence
a reasonable opportunity to know what is prohibited.  We hold that Section
822.005(a)(1) provides fair notice to citizens as to the type of conduct that
is proscribed:  failing to secure your dog when you ought to be aware of the
risk that the dog will, without provocation, attack a person.  The court in State
v. Taylor, 322 S.W.3d 702 (Tex. App.—Texarkana 2010, pet. filed), upheld
Section 822.005(a)(1) in the face of an attack challenging the statute for
unconstitutional vagueness.  Likewise, we hold that it is not unconstitutionally
vague on its face.

Appellant
specifically argues that the statute is unconstitutionally vague because the
terms “unprovoked” and “attack” are not defined.  A statute is not
unconstitutionally vague merely because the words or terms used are not
specifically defined.  Bynum, 767 S.W.2d at 774; Engelking v. State,
750 S.W.2d 213, 215 (Tex. Crim. App. 1988).  Instead, the words must be read in
the context in which they are used and construed according to the rules of
grammar and common usage.  Tex. Gov’t
Code Ann. § 311.011(a) (Vernon 2005).  The undefined terms about which
appellant complains – “unprovoked” and “attack” – relate to the actions of the
dog, not the conduct of the person, and are such that they may be given their
common meaning.  

Appellant
also implies that the statute is unconstitutional as applied in this case
because the attack in this case may have begun or occurred on appellant’s real
property.  The evidence showed, however, that Tanner would have bled out
quickly from any of the three fatal wounds, that Tanner’s body and blood were
located in a ditch across the road from appellant’s property, and that there
was no blood or drag marks indicating that the deadly attack occurred anywhere
other than the ditch.  Even if the attack began on appellant’s property, it is
clear from the evidence that Tanner was fatally attacked at a location other
than appellant’s property.  We hold that Section 822.005(a)(1) is not
unconstitutional on its face or as applied in this case.  Appellant’s first
issue is overruled.  

Unanimous
Verdict

In
his second issue, appellant argues that his conviction violates the unanimous
jury guarantee of the Texas Constitution and the “substantial majority”
requirement of the Sixth Amendment.  Appellant’s argument under this issue also
relates to the definition of “attack” and the meaning that the jurors may have
given that term.  Appellant asserts that, because some jurors could have
believed the attack initially occurred on his property and then continued
across the road while other jurors could have believed the attack occurred
entirely off his property, the verdict was not necessarily unanimous.  We
disagree.  

The
trial court’s charge to the jury required that each juror, in order to find
appellant guilty, find beyond a reasonable doubt that appellant’s dog or dogs
“made an unprovoked attack” that “occurred at a location other than the owners [sic]
real property.”  Pursuant to this charge, regardless of the jurors’ beliefs
concerning where the attack began, each juror was required to find that an
attack occurred somewhere off appellant’s premises.  The jury’s verdict,
therefore, must have been unanimous as to that element of the offense. 
Appellant’s second issue is overruled.  

Sufficiency
of the Evidence

In
his third issue, appellant argues that the evidence is legally and factually
insufficient to support his conviction.  Appellant specifically asserts that
the evidence is insufficient as to the lack of provocation and the location of
the attack.  

We note at the outset of our analysis that the Texas Court
of Criminal Appeals has now held in Brooks v. State, 323 S.W.3d
893 (Tex. Crim. App. 2010), that there is “no
meaningful distinction between the Jackson v. Virginia[3]
legal-sufficiency standard and the Clewis[4] factual-sufficiency standard”; that the Jackson v.
Virginia standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt”;
and that “[a]ll other cases to the contrary, including Clewis, are
overruled.”  Brooks, 323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly,
a challenge to the factual sufficiency of the evidence is no longer viable.  We
also note that appellant did not have the benefit of the opinion in Brooks when
this case was briefed.  We will review appellant’s factual sufficiency challenge
under the legal sufficiency standard set forth in Jackson v. Virginia.  Under
this standard, we must review all of the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443
U.S. 307; Brooks, 323 S.W.3d at 899.  

The
record shows that Tanner lived in a rural area around the corner from appellant
and that he had been playing with Watson’s daughter and another girl most of
the day prior to the attack.  The children had been going back and forth
between the residences on a trail that went through an opening in the wire
fence that separated the properties.  Two of appellant’s dogs played with the
children and followed them back and forth.  About 3:00 p.m., Watson called
Tanner’s mother and asked that she send the girls home.  According to Tanner’s
mother, Tanner followed the girls back to appellant’s residence to retrieve a
water gun.  After the girls walked to appellant’s residence, Watson and the
girls drove to Eastland and were apparently not home when the attack occurred. 
Shortly after 4:00 p.m., Tanner’s body was found in a ditch by Sharon Rogers,
who lived down the road from appellant.

Rogers
testified that she saw a little boy lying in the ditch with a “brown puppy”
nearby.  When she realized that the boy was not moving, she backed up and yelled
at the boy, but he did not respond.  Rogers got out of her car to check on the
boy.  She walked to the rear and around the back of her car but was unable to
get to the boy because two big, white pit bull dogs came running at her and
chased her back into her car.  She drove to the house where the dogs belonged,
and they followed.  She honked her horn, but nobody came out of the house.  She
drove back, parked near the boy, called a neighbor who did not answer, and then
called 9-1-1. While she sat in her car waiting for help to arrive, the two pit
bulls were behind her, “barking and biting at her car.”  Rogers noticed that
the male pit bull’s forehead was covered in blood.

Two
deputies arrived, followed shortly by an ambulance.  As Deputy Caleb Hodges got
out of his vehicle, the white female pit bull came running at him, teeth
showing and growling.  Deputy Hodges fired one shot and killed that dog, but he
noticed a second white dog take off running toward appellant’s residence. 
Deputy Adam Babilon subsequently shot and killed the brown juvenile-age dog
that Rogers referred to as a puppy.  The white male pit bull and a small black
and white dog were subsequently taken from appellant’s residence by animal
control.

Tanner
was already dead and rigor mortis had begun to set in when the deputies and the
paramedic arrived.  According to the medical examiner, Tanner’s injuries were
characteristic of an animal attack, particularly a carnivore.  Most of Tanner’s
injuries occurred right around the time of his death, but some were
postmortem.  The medical examiner listed the cause of death as lacerations of
vasculature (blood vessels) of the neck due to “mauling by canines.”  The
injuries to Tanner’s neck included damage to the left carotid artery, the
external and internal jugular veins on both sides of the neck, and a deep
artery just to the right of the spine.  According to the medical examiner,
Tanner would have bled to death in less than “two to three minutes.”  The
medical examiner testified that some of the injuries on Tanner’s legs and arms
could have been inflicted elsewhere but that the major injuries on Tanner’s
neck were inflicted “right around where he’s found if that’s the limit of the
blood deposit.”

Authorities
conducted a search of the area.  One of Tanner’s shoes was located in
appellant’s yard; it had a small amount of blood on the rubber part next to the
bottom of the shoe.  Tanner’s other shoe was never found.  The ground around
Tanner’s body was soaked with blood.  There were no drag marks, no broken grasses,
and no blood spatters that would indicate the dogs attacked Tanner anywhere
other than in the ditch where Tanner was found, which was 99.5 feet from
appellant’s gate.  The gate was open, and the fence surrounding appellant’s
property was not capable of confining a dog.  Tests showed that all four of
appellant’s dogs had Tanner’s blood on them.  However, because the dental
measurements of the two smaller dogs were similar and the two pit bulls’ almost
identical and because the bite marks on Tanner’s body were so numerous and
commingled, the forensic dentist was not able to match the marks on Tanner’s
body to a specific dog.

Though
there was no evidence that appellant’s dogs had ever bitten a person before,
evidence was introduced that the male pit bull had recently been given to
Watson and appellant and that Watson was told by the previous owner that that
dog had been involved in a dog fight in which a neighbor’s dog was killed.  The
previous owner testified that, as far as she knew, the dog had not been
aggressive toward any humans.  Watson told Deputy Hodges that Tanner and the
girls had played there all day without any trouble between the dogs and the
children and that the dogs had never attacked any human.  Watson did recall
that, one time when the female pit bull  was pregnant, she growled as Tanner was
coming through the fence.

With
respect to evidence regarding the lack of provocation, the testimony showed
that Tanner loved animals and was very good with dogs.  Tanner’s mother
testified that she had never seen him do anything to provoke a dog.  Testimony
also showed that the deputies found no sticks or water guns near Tanner’s body
or anything else that would indicate that Tanner was provoking the dogs. 
Furthermore, the jury could have considered the unprovoked, aggressive actions
of the dogs toward both Rogers and Deputy Hodges when they got out of their
vehicles.  With respect to evidence regarding the location of the attack, the
evidence indicated that, when the fatal wounds were inflicted, Tanner was in
the ditch where his body was found.  The jury, as the trier of fact, was the
sole judge of the credibility of the witnesses and of the weight to be given to
their testimony.  Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  As such, the
jury was free to believe or disbelieve all or any part of any witness’s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
A rational jury could have found that the attack was unprovoked and that it
occurred at a location other than appellant’s property.  Appellant’s third
issue is overruled.  

Prior
Bad Acts of Dog

In
his fourth issue, appellant argues that the trial court abused its discretion
in admitting into evidence the prior bad acts of the male pit bull.  Over
appellant’s objections, the trial court permitted witnesses to testify that, in
its previous owner’s neighborhood, the dog had knocked an elderly man down and
had been in dog fights resulting in the death of two small dogs.  Appellant
objected at trial that the dog’s prior bad acts were irrelevant, unduly
prejudicial, and inadmissible under Tex.
R. Evid. 401, 403, and 404.  Contrary to the State’s assertion,
appellant’s contention on appeal, that the dog’s prior bad acts were
inadmissible under Rule 404(b), was preserved for review.

Rule
404(b) provides:

Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be admissible
for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident, provided that
upon timely request by the accused in a criminal case, reasonable notice is
given in advance of trial of intent to introduce in the State’s case-in-chief
such evidence other than that arising in the same transaction.

 

We are of the
opinion that Rule 404(b) is not applicable to the prior bad acts of a dog.  The
rule specifically relates to “a person.”  Moreover, the dog’s prior bad acts
were admissible to show that the dog’s attack in this case was unprovoked and
also, to the extent that appellant knew of the dog’s prior bad acts, to show
that appellant acted with criminal negligence in failing to secure the dog.

            Appellant
also argues in this issue that the trial court erred by failing to sua sponte
give a limiting instruction to the jury regarding the dog’s prior bad acts.  We
disagree.  Appellant did not request a limiting instruction.  Consequently, the
evidence was admissible for all purposes, and the trial court did not err in
failing to sua sponte give a limiting instruction.  Tex. R. Evid. 105; Delgado v. State, 235 S.W.3d
244, 251 & n.26 (Tex. Crim. App. 2007).  Appellant’s fourth issue is overruled.

            The
judgment of the trial court is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

January 27, 2011

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We note that Smith and Watson were tried together and
have each filed an appeal urging the same issues.  On this same date, we have
affirmed Watson’s conviction.  See Crystal Michelle Watson v. State, No.
11-09-00039-CR (Tex. App.—Eastland Jan. 27, 2011, no pet. h.).





[2]The State asserts that appellant has not preserved this
issue for review.  We disagree.  Appellant objected at a pretrial hearing that
the statute was overbroad and vague and failed to provide proper notice. 
Appellant again objected after the jury verdict on guilt/innocence but before
the punishment stage began that the statute was unconstitutionally vague,
specifically complaining about the lack of definitions for the terms
“unprovoked” and “attack.”  We hold that the issue was preserved for our
review.  See Tex. R. App. P.
33.1.





[3]Jackson v. Virginia, 443 U.S. 307 (1979).

 





[4]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).